# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

          Plaintiff,

v.                                    Case No:  6:11-cv-1054-Orl-28DAB

CREATIONS OWN CORPORATION and
S.C. DANIEL ROSSIGNOL,

          Defendants.

_____

## ORDER

In this declaratory judgment action, Plaintiff Nationwide Mutual Fire Insurance Company ("Nationwide") filed a one-count Complaint (Doc. 1) seeking a declaration that it had no duty to defend or indemnify Defendants Creation's Own Corporation ("Creation's Own") and S.C. Daniel Rossignol, M.D. (collectively "the Insureds") in an underlying suit brought against the Insureds by James Coman, individually and as father and next friend of his minor son, A.J. Coman.[1]  The case is now before the Court on Nationwide's Motion for Summary Judgment (Doc. 55) to which the Insureds responded in opposition (Doc. 56).  Nationwide also filed a reply to the Insureds' response.  (Doc. 63.)  Having considered the submissions of the parties and pertinent law, the Court concludes that Nationwide's motion must be granted.

_____

[1] Although James Coman was originally named as a defendant in this suit, the Court dismissed this case against him sua sponte for lack of personal jurisdiction. (Doc. 54 at 2.)

I. Background

Nationwide issued a Business Owners Liability Insurance Policy (the "Policy") to Creation's Own.  The effective dates of the Policy, which was renewed twice, were from April 20, 2006 through April 26, 2009.  Subject to certain exclusions, the Policy insured Creation's Own[2] against loss or liability occurring as the result of bodily injury, property damage, personal injury, or advertising injury to third parties.  (Policy, Ex. B to Doc. 69 at 27.)[3]  The "Coverages" portion of the Policy expressly states that Nationwide "will have no duty to defend the Insured against any 'suit' seeking damages . . . to which this insurance does not apply."  (Id.)  The "Exclusions" portion of the Policy provides in pertinent part:

This insurance does not apply to:

a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
. . . .

j. Professional Services

"Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service.  This includes but is not limited to:
. . . .

(4) Medical . . . services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;
. . . .

---

[2] Rossignol, as an employee of Creation's Own, is also an insured for purposes of the Policy, but only for acts within the scope of his employment or while performing duties related to the conduct of business.  (Policy at 35.)
[3] Because the original policy issued to Creation's own is identical in all relevant aspects to the policies subsequently issued as renewals, the Court will cite only to the original policy.

>  (9) Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

(Id. at 29, 31-32.)  The Policy also contains a specific endorsement, entitled "druggists liability exclusion," which modifies paragraph 1(j)(9) of the exclusion section.[4] (Id. at 78.) The druggists liability exclusion excludes coverage for "services in the practice of pharmacy."  (Id.)  However, the exclusion is limited by an exception, which states:

>  with respect to an insured whose operations include those of a retail druggist or drugstore, this exclusion applies only to "bodily injury" or "property damage":
>
>  (a) Arising out of any goods of products:
>
>  (i) listed in any formulary of medicinal drugs created under Chapter 465.186 of the Florida Statutes (or any amendment to that law); and
>
>  (ii) prescribed by any insured.
>
>  (b) Arising out of any insured's rendering of, or failure to render, consulting, diagnostic, referral or similar service as permitted or required under Chapter 465.186 of the Florida Statutes or any amendment to that law.

(Id.)  "Bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death . . . ."  (Id. at 37.)

On March 3, 2010, James Coman, individually and as father and next friend of his minor son, A.J. Coman, filed suit against the Insureds and other defendants in Illinois state court.  In the state court complaint (the "underlying complaint"), Coman alleged eight counts against the Insureds including medical negligence against Rossignol (Count XIII);

---

[4] Although the Insureds argue that the original policy and the first renewal did not contain endorsement number BP 01 39-0387, the "Druggists Liability Exclusion," the declarations page of all three policies lists the specific endorsement as part of the policy.  (Ex. B to Doc. 69 at 13; Ex. C to Doc. 69 at 20; Ex. D to Doc. 69 at 14.)

lack of informed consent against Rossignol (Count XIV); intentional misrepresentation against Rossignol (Count XV); civil conspiracy (Count XVI); intentional infliction of emotional distress against Rossignol (Count XIX); intentional infliction of emotional distress against Creation's Own (Count XX); a Family Expense Act claim against Rossignol (Count XXIV); and a Family Expense Act claim against Creation's Own (Count XXV).

Specifically, the underlying complaint alleges that in 2004, A.J. Coman's mother became concerned that her son was exhibiting symptoms of autistic behavior.  (Ex. A to Doc. 1 at 4.)  She contacted Dr. Anju Usman, a physician in Illinois specializing in autism, who began treating A.J. in April 2004.  (Id.)  In December 2006, A.J.'s mother initiated telephone consultations with Rossignol regarding her son's symptoms.  (Id. at 6.)  At the time, Rossignol, a family physician licensed in Florida who works predominately with children with autism, was an employee of Creation's Own, a medical practice located in Melbourne, Florida.  (Id. at 2-3.)  Soon after his initial conversation with A.J.'s mother, Rossignol began assisting Dr. Usman with A.J.'s treatment.  (Id. at 2.)

After ordering several medical tests, Rossignol diagnosed A.J. as suffering from the toxic effects of heavy metals, encephalopathy, nutritional deficiency, inflammation of the brain, and biochemical imbalances.  (Id. at 6-7.)  Over the next two years, Rossignol treated A.J. by prescribing medication, recommending nutritional supplements, and finally recommending chelation therapy to remove mercury and other metals from the body.  (Id.)  During this time, Rossignol treated A.J. solely via telephone, making diagnoses and recommending treatments based on laboratory test results, reports from Dr. Usman, and verbal reports from A.J.'s mother.  (Id. at 6.)  Rossignol also sold A.J.'s parents dietary

supplements, which Creation's Own sells as an adjunct to its medical practice and has available for retail sale in its office. (Id. at 2, 3, 6.) Coman claims that the treatments Rossignol ordered were unwarranted and medically unnecessary and that as a result of the treatments, A.J. suffered permanent and disabling injuries. (Id. at 1.)

On the grounds that the Policy's exclusions preclude coverage, Nationwide now seeks a declaration that it owes no duty to defend or indemnify the Insureds in the underlying suit.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences there from in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "Summary judgment is appropriate 'in declaratory judgment actions seeking a declaration [as to insurance coverage] when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law.'" TIG Ins. Co. v. Smart Sch., 401 F. Supp. 2d 1334, 1337 (S.D. Fla. 2005) (quoting Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001)).

## III. Discussion

### A. Duty to Defend

The first issue before the Court is whether the professional services policy exclusion relieves Nationwide of its duty to defend the Insureds against the underlying lawsuit. Nationwide argues that it is entitled to summary judgment because the

-5-

allegations in the underlying complaint all arise out of injury due to the rendering or failure to render professional medical services to A.J. and therefore are excluded from coverage by the professional services exclusion.

Under Florida law,[5] the duty to defend "depends solely on the allegations in the complaint filed against the insured." Tropical Park, Inc. v. U.S. Fid. & Guar. Co., 357 So. 2d 253, 256 (Fla. 3d DCA 1978). "The insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage." Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir.1993). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). The Court finds that in this case, the Policy's language is not ambiguous.

The Policy contains what is commonly referred to as a "professional services exclusion." This exclusion eliminates Nationwide's duty to defend suits seeking damages for bodily injury "due to rendering or failure to render any professional service," including medical or health treatment, advice, or instruction. (Policy at 31.) Thus, the question is whether the injuries alleged in the underlying complaint were bodily injuries due to the rendering or failure to render medical or health treatment, advice, or instruction.

First, the Court finds that Nationwide does not have a duty to defend the Insureds against Coman's claims against Rossignol for medical negligence (Count XIII), lack of

---

[5] When the jurisdiction of the court is based on diversity of citizenship and the policy was issued in Florida, as is the case here, the district court must look to the substantive law of Florida for guidance in interpreting the policy. Lazzara Oil Co. v. Columbia Cas. Co., 683 F. Supp. 777, 779 (N.D. Fla.1988) (citing Pepper's Steel & Alloys, Inc. v. U. S. Fid. & Guar. Co., 668 F. Supp. 1541, 1544 (S.D. Fla.1987)).

informed consent (Count XIV), and intentional misrepresentation (Count XV).  Each of these causes of action alleges that Rossignol, through his professional medical diagnosis, treatment, and care of A.J., caused A.J. to undergo unnecessary and medically unwarranted treatment and that, as a result, A.J. sustained disabling and permanent bodily injury.[6]  Accordingly, Nationwide does not have a duty to defend the Insureds against Counts XIII, XIV, and XV of the underlying complaint.

Coman's claim of civil conspiracy against Rossignol and Creation's Own (Count XVI) alleges that Rossignol conspired with his co-defendants in the underlying suit to induce A.J.'s parents to agree to medically unwarranted therapy.  The claim alleges that as a result of the conspiracy to provide medically unwarranted therapy, A.J. sustained bodily injury.  Thus, despite the civil conspiracy label, the claim alleges bodily injury due to the rendering of professional medical services, treatment, advice, or instruction.[7] Accordingly, Nationwide has no duty to defend the Insureds against Count XVI.

Next, the Court also finds that Nationwide does not have a duty to defend the Insureds against Coman's Family Expense Act claim against Rossignol (Count XXIV) or his Family Expense Act claim against Creation's Own (Count XXV).  In its motion, Nationwide explains that under Illinois's Family Expense Act, 750 Ill. Comp. Stat. 65/15(a)(1), parents are liable for the medical expenses of their minor children.  See Graul v. Adrian, 205 N.E.2d 444, 446 (Ill. 1965).  Coman's claims brought under the

---

[6] Alternatively, the claim for intentional misrepresentation would also be excluded from coverage under the expected or intended injury exclusion, which excludes coverage for bodily injury expected or intended by the insured.

[7] Like the claim for intentional misrepresentation, the claim for civil conspiracy could also be excluded from coverage under the expected or intended injury exclusion.

Family Expense Act seek damages for medical expenses related to the injuries A.J. allegedly suffered as a result of Rossignol's professional medical treatment. Therefore, the professional services exclusion also excludes coverage for the damages sought in Counts XXIV and XXV. See Md. Cas. Co. v. Fla. Atl. Orthopedics, P.L., 771 F. Supp. 2d. 1328, 1335 (S.D. Fla. 2011) ("The proper focus in these types of cases is on the factual origin of the injury, and not on the labels placed on the claims by the plaintiff in the underlying action.") (citing Duncanville Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Tex., 875 S.W.2d 788 (Tex. App. 1994)).

This leaves only the claims for intentional infliction of emotional distress against Rossignol (Count XIX) and intentional infliction of emotional distress against Creation's Own (Count XX). Unlike the claims discussed above, neither of the intentional infliction of emotional distress claims alleges damages relating to A.J.'s physical injuries. Instead, Coman alleges that the Insureds maliciously and intentionally subjected A.J. to invasive, dangerous, and medically unwarranted treatment solely for the purpose of their financial enrichment and that, as a result, Coman suffered "an impairment of his parental rights[,] . . . severe mental anguish and emotional distress." (Ex. A to Doc. 1 at 42-43.) Coman does not allege any corresponding physical manifestation of his emotional distress. Thus, the damages alleged in the intentional infliction of emotional distress counts are not physical injuries easily placed in the "bodily injury" category.

The Policy covers only "damages because of 'bodily injury', 'property damage', 'personal injury', or 'advertising injury'" to which the insurance applies. (Policy at 27.) The Policy further explains that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any

time from the 'bodily injury'."  (Id.)  However, to find that "care" or "loss of services" resulting from bodily injury encompasses Coman's emotional distress would stretch the Policy beyond reasonable interpretation.  The Policy expands the definition of bodily injury to include expenses related to the care of the injured person or loss of services resulting from the injury.  It does not expand the definition of bodily injury to include the distress that a parent suffers as a result of watching a child experience pain.  Accordingly, the Court finds that the injury that Coman alleges in the intentional infliction of emotional distress claims is not an injury covered by the Policy.[8]  Thus, Nationwide is not required to defend the Insureds against Counts XIX and XX.

In their response to the motion for summary judgment, the Insureds rely heavily on the "druggists liability exclusion," which creates a limited exception to the professional services exclusion.  The druggists liability exclusion provides that services in the practice of pharmacy are excluded from coverage as professional services, but it limits the exclusion for an insured whose operations include those of a "retail druggist" or "drugstore."  (Id. at 78.)  If the insured operates as a retail druggist or drugstore, the exclusion for professional services in the practice of pharmacy would apply only to bodily injury arising out of any goods or products (1) "listed in any formulary of medicinal drugs created under Chapter 465.186 of the Florida Statutes" and (2) "prescribed by any insured."  (Id.)

---

[8] However, even if the Court were to find that the damages fit within the expanded definition of bodily injury, the intentional infliction of emotional distress claims would then be excluded from coverage by the expected or intended injury exclusion, which excludes coverage for bodily injury "expected or intended from the standpoint of the insured."  (Policy at 29.)

The Insureds argue that the underlying complaint alleges that Creation's Own conducted business operations that include those of a retail druggist or drugstore. Thus, the Insureds argue, the exception to the exclusion applies. In support of their argument, the Insureds point to allegations that Creation's Own "distributed and sold dietary supplements to patients throughout the United States" and "manufactured, distributed, and/or sold to A.J.'s parents" some of the medications that Rossignol prescribed. (Ex. A to Doc. 1 at 2, 6-7.) The Insureds also point out that Creation's Own retails nutritional supplements and multivitamins to the public.

However, storing and selling supplements and multivitamins in a medical office does not transform the medical practice into a retail drugstore. The underlying complaint alleges that Creation's Own sold dietary supplements to its patients "as an adjunct to its medical practice." (Id. at 3.) The underlying complaint does not allege that Creation's Own filled prescriptions written by other physicians, employed a pharmacist, was licensed as a pharmacy, or provided prescription services to the public. In fact, the Insureds point out that the supplements that Creation's Own advertised, distributed, and sold are "dietary supplements or vitamins" and "are not prescription drugs." (Doc. 56 at 8.) Thus, there are no allegations that suggest that Creation's Own was acting as a retail druggist or drugstore. See Parr v. Spires, 41 So. 2d 336, 338 (Fla. 1949) (hospital drug room operated by a physician was not a "drug store" where the physician did not fill other physicians' prescriptions). Because the underlying complaint is devoid of allegations that Creation's Own was operating as a retail druggist or drugstore, the exception to the exclusion for professional services in the practice of pharmacy is not applicable.

Moreover, prescribing medications to patients, dispensing medications to patients as the physician deems necessary, and recommending or selling dietary supplements in the course of treatment are intricate parts of the provision of medical services. See Fla. Stat. § 465.0276(1)(a) ("practitioner authorized by law to prescribe drugs may dispense such drugs to her or his patients in the regular course of her or his practice"). As discussed above, injury due to the rendering of professional medical services is excluded from coverage under the Policy.

### B. Duty to Indemnify

"Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify whatsoever." Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) (citing Celotex Corp. v. AIU Ins. Co., (In re Celotex Corp.), 152 B.R. 661 (Bankr. M.D. Fla. 1993). In analyzing the duty to defend in this action, the Court has determined that there is no coverage under the Policy. The absence of coverage forecloses any obligation of indemnity under the Policy.

### C. The Insureds' Motion to Strike

The Court has considered the Insureds' Motion to Strike the Plaintiff's "Notice of Filing Corrected Exhibits to the Plaintiff's Petition for Declaratory Judgment." (Doc. 73.) On September 28, 2012, Nationwide filed a notice of filing "corrected exhibits," stating that the original Policy and two policy renewals it originally filed were incomplete due to scrivener's error. (Doc. 69.) Citing Rule 12(f) of the Federal Rules of Civil Procedure, the Insureds now ask this Court to strike the corrected exhibits, arguing that the exhibits are "immaterial, impertinent, and highly prejudicial to the defense." (Doc. 73 at 4.) The Insureds state that a "careful comparison" of the corrected exhibits with the original

-11-

exhibits attached to the Plaintiff's Petition for Declaratory Judgment shows that they are materially different in both form and content, (id. at 3), but the Insureds fail to identify how the documents are materially different. The Insureds also fail to explain how they are prejudiced by Nationwide's corrected filings.

After a "careful comparison" of the policies originally attached to Nationwide's Petition for Declaratory Judgment and the corrected exhibits, the Court can only surmise that the Insureds feel that they are materially different because the "Druggists Liability Exclusion" was originally attached only to the second renewal of the Policy.  In comparison, in the corrected exhibits, the druggists liability exclusion is attached to all three policies.  However, the druggists liability exclusion creates an exception to an exclusion; therefore, its inclusion would only work in favor of the Insureds.  The relevant portions of the policies otherwise appear to be identical.  Furthermore, the Court notes that the Insured's Motion to Strike is untimely.  See Fed. R. Civ. P. 12(f)(2) (stating that a party may file a motion to strike a pleading within twenty-one days after being served with the pleading).  Because the motion to strike is untimely and fails to explain how the corrected exhibits are either materially different from those originally filed or prejudicial to the Insureds, the motion to strike is denied.

### IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Summary Judgment (Doc. 55) filed by Plaintiff Nationwide Mutual Fire Insurance Company is **GRANTED**.

2. The Clerk is directed to enter judgment providing that Plaintiff Nationwide has prevailed on its Complaint seeking a declaratory judgment that it has no duty to defend or

indemnify its insureds—Creation's Own Corporation and S.C. Daniel Rossignol, M.D.—with regard to the claims asserted against Creation's Own and Rossignol in Case No. 2010L002776 in the Circuit Court of Cook County, Illinois.   Thereafter, the Clerk shall close this file.

3. The Motion to Strike the Plaintiff's "Notice of Filing Corrected Exhibits to the Plaintiff's Petition for Declaratory Judgment" (Doc. 73) filed by Creation's Own and S.C. Daniel Rossignol, M.D. is **DENIED**.

4. All other pending motions are **DENIED** as moot.

**DONE** and **ORDERED** in Orlando, Florida on this _____ day of November, 2012.

_____
JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record